## ANN J. SNOUFFER ET AL. v. THEODORE HEISIG

Decided June 30, 1910.

**1.—Sheriff's Sale—Irregularity—Inadequacy of Price—Presumption.**

It will be presumed that an irregularity in a sheriff's sale under execution which was calculated to cause the property to sell for an inadequate price (in this case, a failure to mail to the defendant in execution a notice of the levy and intended sale) did in fact have that effect, and the burden is on the purchaser at such sale to prove the contrary. Charge considered and approved.

**2.—Same.**

Where the defendant in execution is without fault and moves promptly to set aside the sale, tendering to the purchaser the money paid by him for the land, and proves a gross inadequacy of price, coupled with irregularities or other circumstances calculated to produce inadequacy of price, he is entitled to have the sale set aside, unless it is made to appear that in fact the alleged irregularities or other circumstances did not conduce to the inadequacy.

**3.—Same—Evidence.**

Evidence considered and held to show conclusively that the failure of the sheriff to mail to the defendant in execution the statutory notice of the intended sale of her property, was the sole cause of the property selling for an inadequate price, and it was therefore error for the trial court to submit that issue to the jury.

**4.—Execution Sale—Statutory Notice.**

Knowledge by a defendant that a judgment existed against him and would be enforced by a sale of property if it was not paid, is not equivalent to the notice required by statute to the defendant in the execution that his property was actually advertised for sale.

Vol. LXII Civil—6.

**5.—Incompetent Evidence—Effect.**

Incompetent evidence, when admitted without objection, may be considered in passing upon the issue which it tends to prove.

**6.—Sheriff—Notice to.**

Notice to a deputy sheriff will be imputed to his principal. Rule applied in the case of notice to a deputy sheriff of the residence of a defendant in execution.

**7.—Execution Sale—Equitable Owner—Notice to Purchaser.**

Evidence considered and held sufficient to charge the agent and attorney of purchasers of land at execution sale with notice that the defendant in execution was a naked trustee of the legal title to the land sold and that the equitable title was in other persons.

**8.—Equitable Title—Limitation.**

As between the two, limitation does not run against the owner of the equitable title to land so long as the holder of the legal title recognizes and admits the claim of the equitable owner. This rule extended to a case in which the owner of the equitable title to land was induced by the promises and conduct of the holder of the legal title to believe that the former's title was not in fact repudiated and that therefore no suit was necessary to establish the equitable claim.

**9.—Conveyance in Trust—No Estoppel.**

When a conveyance is made with the understanding between the grantor and grantee that it should not affect the real title to the property as it stood before the conveyance, and no consideration is paid, the grantee can not set up estoppel against the grantor by reason of the conveyance. And so as to purchasers from the grantee with knowledge of the facts.

**10.—Execution Sale—Agreement of Several to Buy—Validity.**

An agreement between several persons to buy certain property at execution sale for their joint account and that one of their number would do the bidding, would not invalidate the sale when it is not made to appear that the purpose of the agreement was to suppress competition at the sale.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Blain & Howth,* for appellants.—The court erred in that portion of its charge set out in the first assignment of error. Allen v. Pierson, 60 Texas, 604; Kauffman & Runge v. Morriss, 60 Texas, 122; Bean v. City of Brownwood, 91 Texas, 689; Irvin v. Ferguson, 83 Texas, 495; Weaver v. Nugent, 72 Texas, 279; Gunter & Summerfield v. Cobb, 82 Texas, 599; Teas v. McDonald, 13 Texas, 349; Johnson v. Crawl, 55 Texas, 574; Martin v. Anderson, 4 Texas Civ. App., 117; Beckham v. Medlock, 19 Texas Civ. App., 61; Leeper v. O'Donohue, 18 Texas Civ. App., 531; Driscoll v. Morris, 2 Texas Civ. App., 606; McKennon v. McGown, 11 S. W., 533.

Said charge is error in that it is calculated to mislead the jury and produce upon their minds an impression that the court was in doubt as to whether or not the sheriff knew the postoffice address of the defendant in execution, when this fact was proved by uncontroverted evidence. Wintz v. Morrison, 17 Texas, 387; Galveston, H. & S. A. Ry. Co. v. Thompson, 44 S. W., 9; Western U. Tel. Co. v. Burgess, 60 S. W., 1024.

The court erred in the following portion of its charge: "You are further instructed in this connection, however, that inadequacy of consideration alone, although gross, will not of itself suffice to set aside a sheriff's sale; but such inadequacy of consideration, together with an irregularity such as the failure to give notice of a sheriff's sale, when such irregularity is found by the jury to have been calculated to cause property sold at sheriff's sale to bring a grossly inadequate consideration, will be sufficient grounds for avoiding and setting aside such sale, unless the jury further find that such irregularity did not in fact produce or contribute to bring about such grossly inadequate consideration." Willis Bros. v. McNeill, 57 Texas, 479; Hays v. Gainesville St. Ry. Co., 70 Texas, 607; Wintz v. Morrison, 17 Texas, 387.

Where land is sold under an order of sale, and notice to the defendant in execution, which the law requires, is not given, although her postoffice address is known to the officer executing the writ, it is an irregularity and sufficient ground to set aside the sale, if made for a grossly inadequate price, if such failure to mail such notice was calculated to cause same to sell for such inadequate price, unless it shall affirmatively appear from the evidence that no injury resulted to defendant because of such failure to mail her notice of such sale. Bean v. City of Brownwood, 91 Texas, 689; Kauffman & Runge v. Morriss, 60 Texas, 122; Gunter & Summerfield v. Cobb, 82 Texas, 606; Martin v. Anderson, 4 Texas Civ. App., 117.

Where the law directs that notice in writing be given to defendant whose property is advertised for sale under an order of sale, informing himself of the time and place of sale, the fact that defendant had actual notice thereof does not dispense with the notice which the law requires. Bean v. City of Brownwood, 91 Texas, 689; Leeper v. O'Donohue, 18 Texas Civ. App., 533.

The verdict of the jury is contrary to the law in this: That where property is sold for a grossly inadequate consideration at an execution sale, and an irregularity is shown to exist in the sale which is calculated to have caused the inadequate price, the defendant in execution is entitled to have the sale set aside and deed made thereunder cancelled, upon the tender to the purchaser the money paid with interest. Willis v. Lewis, 28 Texas, 192; Guerin v. Patterson, 55 Texas, 128; Redus v. Burnett, 59 Texas, 582; Gulf, C. & S. F. Ry. Co. v. Wallen, 65 Texas, 572; Houston & T. C. Ry. Co. v. Loefler, 59 S. W., 558; Roberts v. Agnew, 103 S. W., 1178; Allen v. Pierson, 60 Texas, 604; Kauffman & Runge v. Morriss, 60 Texas, 122; Bean v. City of Brownwood, 91 Texas, 689; Irvin v. Ferguson, 83 Texas, 495; Weaver v. Nugent, 72 Texas, 279; Gunter & Summerfield v. Cobb, 82 Texas, 599; Martin v. Anderson, 4 Texas Civ. App., 117; Beckham v. Medlock, 19 Texas Civ. App., 61.

*Parker, Orgain & Butler,* for appellee.—The trial court correctly instructed in effect that inadequacy of price coupled with such an irregu-

larity as failure to mail notice to the defendant in execution of the sale advertised, would not furnish grounds for setting aside such sale in case the jury found from the evidence that such failure to mail said notice did not in fact cause or contribute to cause such inadequacy of price. Kauffman & Runge v. Morriss, 60 Texas, 122; Allen v. Pierson, 60 Texas, 607; McKennon v. McGown, 11 S. W., 533; Martin v. Anderson, 4 Texas Civ. App., 117.

That Ann J. Snouffer was estopped by her warranty deed to L. Virginia Snouffer needs no citation of authority.

That J. J. Snouffer's claim of an equity in the title held by L. Virginia Snouffer was barred by limitation of four years after notice to him of her repudiation of such claim is supported by the following authorities: Stafford v. Stafford, 71 S. W., 984, 70 S. W., 75; McCampbell v. Durst, 40 S. W., 315; Hunter v. Hubbard, 26 Texas, 546; Brotherton v. Weathersby, 73 Texas, 472; Grumbles v. Grumbles, 17 Texas, 477; Tinnan v. Mebane, 10 Texas, 246; Oaks v. West, 64 S. W., 1033; Hudson v. Wheeler, 34 Texas, 368.

"An agreement between two or more to purchase property together as a common enterprise is not fraudulent, and is not within the prohibition against combinations having for their object the prevention of competition." The testimony did not justify submitting the issue of fraudulent collusion to the jury. James v. Fulcrod, 5 Texas, 524, 525; 24 Cyc. Law and Proc., p. 29, note 11; Crosby v. Bannowsky, 95 Texas, 449.

REESE, ASSOCIATE JUSTICE.—This is a suit instituted by Ann J. Snouffer, J. J. Snouffer, Jr., and L. Virginia Snouffer against Theodore Heisig to cancel a certain deed made by Ras Landry, sheriff of Jefferson County, to Theodore Heisig, dated August 7, 1906, conveying certain land described as lots 6, 9, 10, 12, 15, 16, 18, 29 and 31 of Black's first addition to Iowa Colony, a subdivision of a part of the Bullock league in Jefferson County.

The deed sought to be cancelled was made in pursuance of the sale by said sheriff of said property under an execution issued upon a judgment in favor of the First National Bank of Beaumont against L. Virginia Snouffer, a femme sole, and W. H. McDonald. Miss Snouffer was a nonresident of the State and was cited by publication and was represented by an attorney *ad litem* appointed by the court. The property aforesaid was seized under a writ of attachment. Judgment was rendered against her for $365.44, with foreclosure of the attachment lien on the said lots, but it was ordered that no further execution should issue against her.

The following grounds for cancellation of the deed are alleged:

First. That Virginia Snouffer, the defendant in the judgment and execution, had only the naked title to the property, the beneficial title being in Ann J. Snouffer and J. J. Snouffer, Jr., and that the purchaser at the said sale had notice thereof.

Second. That there was a fraudulent agreement and combination between T. V. Smelker,. Oswald Parker, R. A. Hefner, the law partner of said Parker, who had been attorney *ad litem* of said Virginia Snouffer, and the appellee Heisig, to the effect that they would not bid against each other at the sale, the purpose being to suppress competition at such sale and enable Heisig to buy the property for their joint benefit at a depreciated price.

Third. That Heisig, acting for himself and others, agreed with the plaintiff in execution that in consideration of its agreeing not to bid at the sale, appellee Heisig would see that the property brought a sufficient amount to cover the debt, interest and costs, and that this agreement was made for the purpose of preventing the property bringing an adequate price.

Fourth. That at said sale the property sold for a grossly inadequate price, and that this was brought about and induced by the fact that although the sheriff knew of the postoffice address of Virginia Snouffer, the nonresident defendant in the execution, he failed to mail her a copy of the notice of sale as required by law, in consequence of which she failed to protect said property from sale under said writ.

Plaintiffs tendered into court the amount paid by defendant at the sale, with six per cent interest per annum from the date thereof.

Defendants pleaded general denial and, among other pleas not necessary to mention, as to asserted equitable title to J. J. Snouffer, Jr., alleged that the same had been repudiated by Virginia Snouffer more than four years before the filing of this suit and was barred by limitation; and as to that of Mrs. Ann J. Snouffer alleged that after the execution of the deed from Black to Virginia Snouffer, which, it is alleged by plaintiffs, was in trust for Ann. J. Snouffer and J. J. Snouffer, Jr., the said Ann J. Snouffer, joined by her husband, had executed a deed of conveyance to Virginia Snouffer conveying all of her right, title and interest in the land in controversy, and that Ann J. Snouffer was estopped thereby to set up such equitable title.

Upon trial with a jury the court withdrew from the consideration of the jury all of the issues in the case except that arising from the allegation of the petition with regard to the sale of the property at the sheriff's sale for a grossly inadequate price produced, as alleged, by the failure of the sheriff to send to Virginia Snouffer a copy of the notice of sale, as required by the statute.

The jury returned a verdict for defendant, upon which judgment was entered, from which plaintiffs prosecute this appeal.

The court charged the jury as follows: "And you further believe from the evidence that the failure on the part of said sheriff to mail to the said L. Virginia Snouffer a notice of said sale as before mentioned, to the postoffice address of said L. Virginia Snouffer, if said sheriff knew her said address, was calculated to cause said property to sell at said sheriff's sale for such grossly inadequate consideration as alleged by the plaintiffs, then you are instructed to find in favor of all

the plaintiffs for the cancellation of said sheriff's deed as prayed by them, regardless of whether defendant knew that said sheriff failed to mail such notice or not, unless you believe from all the facts and circumstances before you (regardless of by which side or whether by both sides the same was introduced) that such failure on the part of said sheriff to mail said notice did not in fact cause or contribute to cause said property to sell for a grossly inadequate consideration, if in fact such consideration was grossly inadequate."

The giving of this charge is made the basis of the first assignment of error, and specific objections are set out by several propositions thereunder.

The first proposition is that if the irregularity in failing to mail a notice to the address of Virginia Snouffer existed and was calculated to cause said property to sell for a grossly inadequate price, it is a conclusive presumption that the irregularity produced this effect, and it was therefore error to leave it to the jury to say whether the sale for the grossly inadequate price was caused by the irregularity mentioned.

The contrary of this proposition was expressly decided by the Supreme Court in Allen v. Pierson (60 Texas, 604), and we can not find that this has ever been overruled, expressly or impliedly, by any later decision of that court. In Kauffman v. Morriss (60 Texas, 122), speaking of inadequacy of price at a judicial sale as ground for setting aside the sale, the Supreme Court says: "What causes are sufficient for this purpose can not well be reduced to any general rule, but they must be such as were calculated to prevent the property from bringing its value or something reasonably near what it should bring at public sale, *and which on the particular occasion have actually produced that effect.*"

In Martin v. Anderson, 4 Texas Civ. App., 111 (23 S. W., 290), the Court of Civil Appeals of the Second District says, with reference to the rule announced in Allen v. Pierson, that it does not seem to be a correct statement of the rule on this subject in view of the later decisions, citing Irvin v. Ferguson, 83 Texas, 491, and Weaver v. Nugent, 72 Texas, 280. But the opinion proceeds to state the correct rule to be that, "Where the defendant is without fault, and moves promptly to set aside the sale, tendering to the purchaser the money paid by him for the land, and shows a gross inadequacy of price coupled with irregularities or other circumstances calculated to produce the result complained of, we think he is entitled to the equitable relief sought, *unless it is further made to appear that, in fact, the alleged irregularities or other circumstances did not conduce to the alleged inadequacy.*"

This, as we understand it, is the rule announced in Pearson v. Flanagan (52 Texas, 277), and followed in the charge complained of. It will be noticed that the charge in question assumes that the inadequacy was produced by the irregularity unless rebutted by proof that it was not, throwing the burden on the defendant to rebut the *prima facie* presumption that the inadequacy of price was caused by the irregularities in the sale. In Driscoll v. Morris, 2 Texas Civ. App., 603 (21 S. W.,

629), a charge was approved which did not even recognize this *prima facie* presumption, but required the party seeking to have the sale set aside for this cause to show that the irregularities caused the depreciated price.

In McKennon v. McGown (11 S. W., 533), upon this point Pearson v. Flanagan is cited with approval. It would seem to be in accordance with sound principles to allow the defendant, in cases of this kind, to show that, notwithstanding irregularities in the sale calculated to cause the property to sell for a grossly inadequate price, and a sale for such price, nevertheless, the irregularity in question had nothing to do with such result; as in the present case, the irregularity in failing to send Virginia Snouffer a notice of the sale, should not be ground for setting aside the sale, in connection with a sale for a grossly inadequate price, if it could be shown that, in fact, Virginia Snouffer had such notice for twenty days before the sale. The logical consequences of the contrary rule would be to allow such sales to be set aside for gross inadequacy alone, which is not the rule, except probably in such cases as that the consideration paid is so enormously disproportionate to the value of the property that it would be a fraud in the purchaser to attempt to hold it. (Taul v. Wright, 45 Texas, 394; Weaver v. Nugent, 72 Texas, 273.) This ground of objection to the charge can not be sustained.

As a further ground of objection to this charge it is urged that there was nothing in the evidence to suggest that any other cause conduced or contributed to the inadequacy of the price than the failure of the sheriff to mail the notice to Virginia Snouffer, and therefore the court erred in submitting the issue to the jury as to whether this failure caused this result, and it is urged that as a whole the charge by repetition gave too much prominence to this issue. It was conclusively shown that the property sold for a grossly inadequate price. For the nine lots, containing ten acres each, appellee bid $50 each, in the aggregate $450. The property was encumbered with a tax lien for $350. The evidence of their value varied from $25 to $100 per acre, that is, from $2250 to $9000 for the whole property. It is a fair indication of the value that the purchaser rendered it for taxation the next year at $3500. It is also conclusively shown that the sheriff did not mail to Virginia Snouffer the notice which the law required him to send her, as she was a nonresident and had no attorney of record, if he knew her postoffice address. As to whether he did know this, was submitted to the jury. To show that the failure to mail the notice to Virginia Snouffer did not cause the sale for the inadequate price, evidence was introduced to show that J. J. Snouffer, Jr., one of the alleged equitable owners of the property, knew of the judgment and of the intention to enforce it, and also that attorneys for plaintiffs in the execution had written to Ann J. Snouffer, the other alleged equitable owner, advising her of the judgment and of the intention to enforce it by sale of this property.

It must be noted that Mrs. Snouffer denied having received this letter or that she had any knowledge even of the judgment; as did Virginia

Snouffer who had been cited by publication. They all testified that they could and would have raised the money necessary to pay off the judgment if they had known the property was actually advertised for sale; and, considering the unquestioned fact that the property with the tax lien was worth at least more than three times the amount of the debt, and very probably ten times as much, there is no reason to doubt that they would have done so, or that they would at least have had a representative at the sale to see that the property brought something in the neighborhood of its value. The notice that the judgment existed and that the same would be enforced by a sale of the property if it was not paid, was not equivalent to the notice required by statute to the defendant in the execution, that it was actually advertised for sale. (Bean v. City of Brownwood, 91 Texas, 689.) Looking to the entire evidence, we are of the opinion that it was for this reason error to submit to the jury the issue as to whether the irregularity referred to in fact caused the property to sell for the depreciated price.

The evidence did not raise the issue as to whether the postoffice address of Virginia Snouffer was Cedar Rapids, Iowa. It was conclusive and uncontroverted on this point, and should have been so held by the trial court.

Upon the issue as to whether the sheriff knew this, which was submitted to the jury, the evidence is probably conflicting. As against the positive statement of Miller, attorney for the plaintiff in execution, that he told Miss Wilson, the deputy sheriff who seems to have been acting in the matter, that Miss Snouffer's address was Cedar Rapids, Iowa, and that he directed her to mail to her a copy of the notice of sale, which he gave her, we have the return upon the execution, introduced for this purpose, reciting that Virginia Snouffer's postoffice address was unknown. This return was made out and signed by Miss Wilson as deputy sheriff, and must be taken as, at least, the statement of the deputy sheriff of this fact. Parker, witness for appellee, also stated, without objection, that the sheriff told him that he did not know Miss Snouffer's address. This last testimony, hearsay as it was and inadmissible if objected to, has a probative value in establishing the fact stated, if admitted without objection. (Gray v. Fussell, 48 Texas Civ. App., 261, 106 S. W., 454.)

We think the court did not err in submitting this issue to the jury. If, however, Miller, an attorney for the plaintiff in the execution, notified the deputy sheriff that Miss Snouffer's address was Cedar Rapids, Iowa, and directed her to send her a copy of the notice of sale, as he testified, then the sheriff would not be allowed to say that he did not know such address, nor would such alleged want of knowledge be available to appellee. Notice to the deputy was notice to the sheriff.

The court erred in refusing to submit to the jury the issues as to the equitable ownership of the property by Ann J. Snouffer and J. J. Snouffer, Jr., and that Virginia Snouffer held the naked legal title for their benefit, and of notice to the purchaser at the sale of this fact. The evidence conclusively showed that the property had been bought by Ann J.

Snouffer, either for her own benefit or that of herself and her son, J. J. Snouffer, Jr., jointly, and that the purchase money had been furnished either by her or by the two jointly; at any rate, that the deed was made to Virginia Snouffer for the purpose of conveying to her the naked legal title. The explanation of this, given by the evidence, was that Mrs. Ann J. Snouffer was a married woman and, as she was furnishing the purchase money out of her separate means, she did not desire to be hampered by having to have her husband join in any conveyance she might make. As to J. J. Snouffer, Jr., he was a married man, and as Virginia Snouffer, the daughter, was unmarried and lived with her mother, there would be nothing in the way of her making conveyances of the property as the same was sold. These facts of the equitable ownership of Ann J. Snouffer and J. J. Snouffer, Jr., jointly, or if not jointly, of that of Mrs. Snouffer, is established by the uncontroverted evidence. Virginia Snouffer has never claimed otherwise.

Without burdening this opinion with a recapitulation of the evidence upon this issue, we think it was sufficient to raise the issue that Parker, who bid in the property for himself and Heisig and Smelker, and who was consulted by the others about the title and his advice acted on, had knowledge of such facts as would have put a reasonably prudent man upon inquiry as to the equitable title of Ann J. Snouffer and J. J. Snouffer, Jr., which inquiry, if prosecuted with reasonable diligence in the proper quarter, would have enabled him to find out the facts. After examining the abstract of title, which contained evidence of this claim on the part of Ann J. Snouffer and J. J. Snouffer, Jr., Parker was not satisfied with the information therein contained, but evidently having some knowledge of the claim of equitable title here set up, felt the necessity of making further inquiry; but in prosecuting such inquiry he went to the attorneys for the plaintiff in execution who, while they perhaps would not have positively misled him, were directly interested in behalf of their client in selling the property as the property of Virginia Snouffer and not interested in Parker obtaining any information which would have thwarted this purpose. The reticence of these parties, and their evident reluctance to discuss the matter with Parker, as expressed by them, was sufficient to arouse the suspicions of a man of ordinary prudence and to have suggested further search for information from some other source.

Appellee seeks to answer this by the statement that as to the claim of title by J. J. Snouffer, Jr., he relied upon the fact that that claim was barred by limitation; and as to that of Ann J. Snouffer, that she was estopped to set it up now by a certain quitclaim deed executed by her, joined by her husband, to Virginia Snouffer in 1901, and after the execution of the deed by Black to Virginia Snouffer conveying the legal title to the property in fact for the benefit of her mother and brother.

The facts with regard to these matters are as follows: On April 13, 1901, more than four years before the institution of this suit, J. J. Snouffer, Jr., instituted suit against Virginia Snouffer, setting up his

equitable title to an undivided one-half interest in the property, alleging that Virginia Snouffer denied and repudiated the same, and claimed to hold both the legal and equitable title, and refused to partition the same or to account to him for any of the proceeds of sale of any of the land. That said cause was never brought to trial, but was, on April 11, 1902, dismissed at the instance of said J. J. Snouffer, Jr. J. J. Snouffer, Jr., testified that he was induced to abandon and dismiss this suit by the promise that Virginia Snouffer would convey the property to his mother, by whom his title was recognized. His title is recognized by Virginia Snouffer in this suit. It is fairly inferable from the evidence that the abandonment of his suit by J. J. Snouffer, Jr., was not an abandonment of his claim, but was brought about by circumstances which led him to believe that his title was not in fact repudiated and the suit was not necessary. In such case limitation would not run against him.

After the conveyance of the property to Virginia Snouffer, Mrs. Ann Snouffer, joined by her husband, in 1901, executed to her a quitclaim deed to this and other property, which was duly recorded, and it is contended that appellee had the right to assume from this that Ann J. Snouffer had conveyed to Virginia Snouffer the equitable title remaining in her, and that she was estopped to deny this. This instrument was in the abstract of title and was examined by Parker before making the purchase. As to this Mrs. Snouffer testified that it was generally understood that Virginia Snouffer held only the legal title to the property, the equitable title being in herself and her son, and purchasers were disposed to require her and her husband to join Virginia in deeds to the property, and to avoid this, this deed was executed. The substance of her testimony is that no consideration was paid for this conveyance and that it was understood that it should not affect the real title to the property as it stood, the legal title still being in Virginia in trust for her mother and brother. There was evidence in the abstract tending to show that after the execution of this deed, Mrs. Snouffer continued to claim an equitable title, or some interest in the property. At any rate, Parker was not satisfied with this, but thought it necessary to make further inquiry as to the equitable interest of Mrs. Snouffer and son, as hereinbefore set out. If it be true—and the evidence all indicates that it is—that this conveyance was made with the understanding between Virginia Snouffer and her mother that it should not affect the real title to the property as it already stood, no consideration being paid for it, no court of equity would hold Mrs. Snouffer estopped thereby as against Virginia Snouffer, or allow Virginia Snouffer to set up such deed in bar of Mrs. Snouffer's claim; and if appellee bought under such circumstances as affected him with notice of the continued assertion of equitable title in Mrs. Snouffer, he would be in no better attitude than Virginia Snouffer. (Lott v. Kaiser, 61 Texas, 665-672; Whitfield v. Diffie, 105 S. W., 324; 3 Pom. Eq., 1044; Landrum v. Landrum, by this court, present term, ante, 43.)

We have not undertaken to set out all of the evidence tending to show

notice to the purchaser. In our opinion it is sufficient to require submission of the issue. The court should have submitted to the jury the issue of equitable title in Ann J. Snouffer and J. J. Snouffer, Jr., and notice on the part of appellee thereof at the time of and prior to the sale at which he purchased.

We have concluded, after careful examination of the evidence, that it does not raise the issue of such agreement between Parker, Smelker and Heisig, as to bidding at the sale, as would afford ground for setting aside the sale. Such agreement, to which Hefner was in no sense a party, was only that the three of them would buy the property and that Parker would do the bidding. It does not appear that it was their purpose to suppress competition at the sale thereby. (James v. Fulcrod, 5 Texas, 512; Hunt v. Elliott, 41 Am. Rep., 803.)

The evidence also does not raise the issue of any agreement between the officers of the bank, plaintiff in the execution, that in consideration of the promise of appellee that he would see that the property brought enough to pay the debt, interest and costs, the bank would not bid at the sale. Certain circumstances brought out by the testimony created a suspicion that there was some understanding to this effect, but they stop short of affording more than a suspicion of the fact.

What we have said sufficiently disposes of the material assignments of error. Such as are not disposed of by what has been said, we have concluded are without merit and are overruled.

For the errors indicated the judgment is reversed and the cause remanded for another trial in accordance with the principles here set out.

· *Reversed and remanded.*